UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TERRY STAMPER | * | CIVIL ACTION NO. 22-01290 |
| VERSUS | * | SECTION "L"(2) |
| CHEVRON CORPORATION, CHEVRON U.S.A. INC., NOBLE ENERGY, INC., CHEVRON MEDITERRANEAN LIMITED; AND WOOD GROUP PSN, INC. | * | JUDGE ELDON E. FALLON<br><br>MAGISTRATE JUDGE DONNA PHILLIPS CURRAULT |

## **ORDER & REASONS**

Before the Court is Defendant Chevron Mediterranean Limited's motion to dismiss claims against them for lack of personal jurisdiction, R. Doc. 23. After reviewing the parties' briefing, record, and applicable law, the Court now rules as follows.

### I.   BACKGROUND

This case arises out of a maritime personal injury dispute. Plaintiff Terry Stamper ("Stamper") was employed by defendant Wood Group and was assigned to work on platform Mari-B in the Mediterranean Sea within sight of the coast of Israel and the Gaza Strip. R. Doc. 1 at 3-4. Stamper alleges that the Mari-B platform was at all times owned, operated, and controlled by Chevron, Chevron USA, Chevron Eastern Mediterranean, and Noble Energy, Inc. and that these Chevron Entities were responsible for the condition of the Mari-B platform. *Id.* The boat dock on the platform had allegedly sunk twenty feet below the water surface due to sinking bedrock caused by the removal of natural gas deposits. *Id.* at 4. This sinkage was allegedly well known, and Stamper alleges that the Chevron Entities had knowledge of the defect and its associated dangers,

1

including the inability to evacuate the platform by boat. *Id.* at 4-5. According to Stamper, no party ever made any plans, provisions, or attempts to replace the platform. *Id.* at 5.

In May 2021, militants in Gaza began a campaign of launching rockets, drones, and autonomous submarines at Israeli targets including offshore platforms including the Mari-B, which was the closet platform to the conflict area. *Id.* The Chevron Entities allegedly did not evacuate Mari-B immediately and instead waited until asked to do so by the Israeli government. *Id.* The Chevron Entities decided to use a vessel instead of helicopter to evacuate the platform because helicopters were thought to be more vulnerable to rocket fire. However, because there was no functioning boat dock on the platform, a crane had to be used to move personnel onto the evacuation vessel. *Id.* at 5-6. Stamper was the only certified crane operator on the platform. *Id.* at 6. After evacuating the last of his co-workers, personnel from the Chevron Entities allegedly informed Stamper that there was no way or plan to evacuate him because there was no boat dock. *Id.*

Stamper claims he was left on the platform for ten days through attacks with only a three-person skeleton security team made up of retired Israeli Special Forces members, with whom Stamper was not allowed to associate. *Id.* at 6-7. This security team has its own reinforced quarters and offices to which Stamper was not allowed access. His only communication with the team was when they would call to tell him to take cover from incoming rockers and drones. *Id.* Through the ten-day attack, although there was no direct hit to the platform, many rockets landed within 200 meters of the platform, allegedly damaging some communications systems and close enough for Stamper and the platform to be "physically shaken by the concussion." *Id.* at 7. Stamper alleges that the same platform endured a similar attack in 2006 and other platforms in the area had been

2

evacuated or shutdown due to conflicts in the region, and that therefore this risk was not a new one. *Id.* at 8.

Stamper sustained severe post-traumatic stress disorder, anxiety, and depression as a result of being left behind. *Id.* He sued Defendants alleging negligence in allowing the platform and boat dock to sink and become inaccessible, that Defendants knew it was in this condition and did nothing about it, and, alternatively, if Defendants allege that the injuries Stamper experienced were not a result of the platform's condition, then Defendants' decision to intentionally abandon him during this conflict was substantially certain to cause mental anguish etc. and therefore this qualifies as an intentional tort which does not allow his employer to escape responsibility via worker's compensation laws. *Id.* at 8-10.

Defendant Chevron USA generally denies Stamper's allegations. R. Doc. 7. Specifically, Chevron USA denies any ownership or operations interests in the Mari-B platform. *Id.* at 3-4. Chevron USA also avers that while it, Noble Energy, and Chevron Mediterranean Limited all share the same ultimate parent company, Chevron Corporation, they are otherwise independent of one another's operations and finances. *Id.* Thus, Chevron USA claims that it is not involved in nor responsible for the operations on Mari-B nor the overall conditions of the platform nor the platforms workers. Chevron USA also avers that while it knew of the insurrection in Gaza through internal reports, it was not involved in or privy to details of operational decisions in regarding the Mari-B platform. *Id.* at 6. Chevron USA then makes a number of affirmative defenses including force majeure, Stamper's own fault, failure to mitigate, and third-party liability. *Id.* at 11-18.

Defendant Noble Energy generally denies Stamper's allegations. R. Doc. 8. Specifically, Noble Energy denies any ownership or operations interests in the Mari-B platform. Noble Energy also avers that while it, Noble Energy, and Chevron Mediterranean Limited all share the same

3

ultimate parent company, Chevron Corporation, they are otherwise independent of one another's operations and finances. *Id.* at 3-4. Thus, Noble Energy claims that it is not involved in nor responsible for the operations on Mari-B nor the overall conditions of the platform nor the platforms workers. Noble Energy also avers that while it knew of the insurrection in Gaza through internal reports, it was not involved in or privy to details of operational decisions in regarding the Mari-B platform. *Id.* at 8-9. Noble Energy then makes a number of affirmative defenses including force majeure, Stamper's own fault, failure to mitigate, and third-party liability. *Id.* at 11-17.

Defendant Wood Group generally denies the allegations. R. Doc. 9. Wood Group admits that it conducts business in Louisiana. *Id.* at 2. Wood Group also makes a number of affirmative defenses including force majeure, Stamper's own fault, failure to mitigate, and third-party liability. *Id.* at 8-15. Defendant Chevron Corporation was voluntarily dismissed by Stamper on September 26, 2022. R. Doc. 10.

## II.   PRESENT MOTION

On July 19, 2023, Defendant Chevron Mediterranean Limited (CML) filed a 12(b)(2) motion to dismiss for lack of personal jurisdiction, which was soon after assigned the submission date of September 27, 2023 to permit additional discovery to proceed. R. Doc. 23; R. Doc. 27. CML avers that it is a company organized under the laws of the Cayman Islands and its principal place of business is Herzilya, Israel. R. Doc. 23. Noting that CML has not purposefully availed itself of Louisiana laws, CML argues that it is therefore "not subject to personal jurisdiction in any Louisiana state or federal court." *Id.* Stamper filed a response on September 19, 2023, in which he presents no opposition to CML's motion. R. doc. 34.

## III.   APPLICABLE LAW

According to Federal Rule of Civil Procedure 12(b)(2), an action may be dismissed for lack of personal jurisdiction. To claim personal jurisdiction over nonresident defendants, two conditions must generally be met: (1) the state's long arm statute must allow service of process; and (2) personal jurisdiction does not violate the Due Process Clause of the 14th Amendment. *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992). The Louisiana long arm statute "extends to the limits allowed by Due Process." *Crosstex Energy Servs., LP v. Tex. Brine Co., LLC*, 253 So. 3d 806, 811 (La. Ct. App. 2018). To satisfy due process in terms of personal jurisdiction, the defendant must have minimum contacts with the forum, and the litigation must not "offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). It must not be unreasonable to require the defendant to defend a suit brought in the particular forum. *Id.* at 317.

Personal jurisdiction may be general or specific. General jurisdiction exists when the defendant has continuous and systematic contacts with the forum. *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 414-16 (1984). The Court must be able to determine that a defendant's contacts with the state are so strong that he is essentially at home in the forum state. *Monkton Ins. Servs., Ltd v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014). For a forum to exercise specific personal jurisdiction over a defendant, the defendant must have purposefully directed his activities toward the forum and the suit must have resulted from alleged injuries that relate to those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985).

When analyzing subsidiaries and parent companies, courts "begin[] with a presumption that a subsidiary, even a wholly-owned subsidiary, is independent of its parent company for jurisdictional purposes." *Administrators of Tulane Educ. Fund v. Ipsen, S.A.*, 450 F. App'x 326,

5

329-30 (5th Cir. 2011) (citing *Dickson Marine Inc. v. Panalpina, Inc.*, 1792 F.3d 331, 338 (5th Cir. 1999)). This presumption may be overcome however if the plaintiff presents clear evidence "beyond the subsidiary's mere presence within the bosom of the corporate family." *Id.* at 329 (quoting *Donatelli v. National Hockey League*, 893 F.2d 459, 465 (1st Cir. 1990)).

## IV. DISCUSSION

CML is not subject to personal jurisdiction in Louisiana. CML is not licensed to do business anywhere in the United States, including Louisiana, and the other Defendants' contacts with Louisiana cannot be imputed, as each are separate entities. R. Doc. 23-1 at 2-3; *Administrators of Tulane Educ. Fund*, 450 F. App'x at 329-30. The Court cannot exercise general jurisdiction in this case because CML is not at home in Louisiana nor can any of its contacts rise to the sufficient level to warrant such jurisdiction under the case law. R. Doc. 23-1 at 6-7; *see Helicopteros Nacionales De Colombia*, 466 U.S. at 414-16. The paradigmatic test for whether an entity is at home fails here, as CML is organized under Cayman Island laws and its principal place of business is in Israel. R. Doc. 23-1 at 6. Further, specific jurisdiction fails because CML has not purposefully targeted its activities toward Louisiana, nor has the litigation arisen from any such contacts. R. Doc. 23-1 at 9 ("Here, it is fundamentally unfair for CML to litigate a case in Louisiana when it has absolutely no connection with Louisiana."); *see Burger King Corp.*, 471 U.S. at 472-73. Importantly, after undertaking discovery between the July filing of this motion and the September submission date, Stamper has filed a response to CML asserting he has no opposition to their motion. R. Doc. 34.

For the foregoing reasons, the Court **GRANTS** CML's 12(b)(2) motion and hereby **DISMISSES** CML as a party to this suit for lack of personal jurisdiction.

New Orleans, Louisiana, this 25th day of September, 2023.

_____
United States District Judge